**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

THOMAS McCOY,                          )
                                       )
              Plaintiff,               )
                                       )
vs.                                    )        CIVIL NO. 04-4099-JLF
                                       )
MAYTAG CORPORATION,                    )
                                       )
              Defendant.               )

<u>**MEMORANDUM AND ORDER**</u>

**FOREMAN, District Judge:**

Before the Court is defendant's motion for summary judgment, (Doc. 50), and plaintiff's response (Doc. 58).  Defendant's motion is discussed below.

## I.    <u>Background.</u>

The following facts are not in dispute except where noted.  On April 21, 2003, plaintiff Thomas McCoy injured his shoulder during the course of his employment at Maytag's manufacturing facility in Herrin, Illinois. (Doc. 50, Exh. 6, McCoy Dep., pp.4-5,Tr.10-11). On April 22, 2003, a physician's assistant examined plaintiff and concluded that he could return to work with restrictions. (Doc. 50, Exh. 6, McCoy Dep., p.9,Tr.15).  Shortly thereafter, a doctor examined plaintiff and returned him to work effective April 24, 2003, with the specific restriction that plaintiff could not use his left arm. (Doc. 50, Exh. 6, McCoy Dep., p.10,Tr.16).  Because plaintiff's supervisor had no jobs that could accommodate that restriction, plaintiff could not return to work. (Doc. 50, Exh. 6, McCoy Dep., pp.10-11, Tr.16-17).

On or about April 28, 2003, plaintiff filed a worker's compensation claim. (Doc. 50,

Exh. 6, McCoy Dep., pp.12-14,Tr.18-20; see also Exh. 8, pp.19-20, Bates Stamp 000352 & 000354).   On April 28, 2003, plaintiff and his treating physician, Dr. Corder, completed a "Statement of Claim for Accident or Sickness Benefits" ("A&S").   This form indicated that plaintiff had been injured at work and that he intended to present a workers' compensation claim. (Doc. 50, Exh. 8, p.8).   This form was sent to defendant on or about May 9, 2003. (Doc. 50, Exh. 6, McCoy Dep., pp.13-14, Tr.19-20)**.**   According to defendant, during the period that plaintiff was collecting A&S benefits, he had a duty to give defendant a status report as to his medical condition every thirty days. (Doc. 50, Exh. 5, Brasher Dep., pp.8-13, Tr.36-42; Exh. 3, Jones Dep., pp.16-17, Tr.41-42).

On August 4, 2003, plaintiff was evaluated by Southern Orthopedic Associates, S.C. and he took a medical note to defendant showing that he was unable to work until after his next evaluation on August 25, 2003. (Doc. 50, Exh. 7, McCoy Dep., pp.9-10, Tr.38-39) (Exh.10, p.8, Bates Stamp 000056).   On August 25, 2003, plaintiff was again evaluated by Southern Orthopedic Associates, S.C., and he provided another medical note to defendant showing that he was unable to work until after his surgery on September 25, 2003. (Doc. 50, Exh.7, McCoy Dep., p.11, Tr.40)(Exh.10, p.10, Bates Stamp 000007).   On or about September 25, 2003, plaintiff's surgeon, Dr. Harryman, faxed two documents to Marie Brasher showing that after the surgery, plaintiff would need to be off work for 8 to 10 more weeks. (Doc. 50, Exh.10, pp.11-12, Bates Stamp 000060, 000362).   According to defendant, these documents would have gone to Nurses Kathy LeMay or David Wittenbrink in defendant's health services department. (Doc. 50, Exh. 5, Brasher Dep., pp.4-8,11,Tr.32-

- 2 -

36,39).  Janice McConnaughy, a human resources generalist, has testified that she did not know of the existence of these medical notes. (Doc. 50, Exh. 4, McConnaughy Dep., pp.2-3,8-11,Tr.5-6,13-17).

Plaintiff's A&S benefits and leave of absence expired on October 21, 2003. (Doc. 50, Exh. 5, Brasher Dep., pp.6-8, Tr.34-36; Exh. 4, McConnaughy Dep., pp.9-11, Tr.14-16).  As such, Nurse LeMay told Janice McConnaughy that defendant needed to obtain undated medical information from plaintiff. (Doc. 50, Exh. 4, McConnaughy Dep., pp.8-10,Tr.13-16). On November 6, 2003, Ms. McConnaughy sent plaintiff a letter *via* certified mail which stated:

> Dear Thomas:
>
> It has come to my attention that we have not heard from you or received medical documentation since your leave of absence expired on October 21, 2003.
>
> Therefore, please submit documentation necessary to support your absence for the past three weeks by 9:00 a.m. on Friday, November 14, 2003 for us to review to determine your employment status.  In addition I need to know why there has been no attempt to contact us.  As per the union contract, Article 13.5, two consecutive days of failing to contact your supervisor or a company representative of your absence constitutes quitting without notice.
>
> If we do not hear from you by that date, we will have assumed that you have terminated your employment with Maytag Herrin Laundry Products.
>
> Sincerely
>
> Janice McConnaughy
> Manager of Employee Relations

*(Doc. 50, Exh. 10, p.17, Bates Stamp 00010).*

From November 6, until November 14, 2003, defendant heard nothing from plaintiff nor did defendant receive a certified mail receipt evidencing delivery of the letter to plaintiff. On November 14, 2003, Ms. McConnaughy sent an email to Nurses LeMay and Wittenbrink asking:

> Can you please tell me if you received updated medical documentation for Thomas McCoy or Joshua Qualls?
>
> They had until 9:00 a.m. to submit it today. Joshua received his certified letter, but I have not received a receipt for Thomas. What address do you have for Thomas?"

*(Doc. 58, Exh. 22).*

Nurse Wittenbrink responded:

> No updated information on McCoy, although I think he tried to pick up an A&S check earlier. On his last continuation form it has an address different than his original paperwork. It is 627 Bryan Avenue, # 9 Carterville, IL   62918.

*(Doc. 58, Exh. 22).*

McConnaughy then sent plaintiff a letter dated November 17, 2003, stating:

> Dear Thomas:
>
> According to our records, we have not heard from you since October 21, 2003. I sent you a certified letter on November 6, 2003 notifying you that you had until 9:00 a.m. on November 14, 2003 to submit medical documentation for our review to determine your employment status. In addition, the current union contract states under Article 13.5, Two consecutive days of No Report Absences is considered to have quit without notice.
>
> Therefore, effective immediately, your employment with Maytag

- 4 -

> Herrin Laundry products has been terminated.  If you can provide documentation to support that you have been reporting your absences to Maytag Herrin Laundry Products, please submit them for our review.
>
> *(Doc. 50, Exh. 10, p.18, Bates Stamp 000062).*

On November 20, 2003, plaintiff accepted both the November 6th and November 17th letters. (Doc. 50, Exh. 8, McCoy Dep., p.10, Tr.61; Exh. 2, p.8, Ashworth Affidavit).

After receiving the letters, plaintiff did not contact defendant, nor did he submit any documents for review. (Doc. 50, Exh. 8, McCoy Dep., p.11, Tr.63; Exh. 4, McConnaughy Dep., Tr.34-35).  Approximately two months later, on January 15, 2004, plaintiff contacted Union Representative Steve Jones to see if anything could be done about his termination. (Doc. 50, Exh. 3, Jones Dep., p.2, Tr.8).  Mr. Jones did not file a grievance on behalf of plaintiff because he concluded that it would have been untimely. (Doc. 50, Exh. 3, Jones Dep., pp.3,14, Tr.9,36).

Plaintiff has brought a two-count complaint for retaliatory discharge and for breach of collective bargaining agreement.  Specifically, plaintiff claims that defendant terminated him in retaliation for exercising his worker's compensation rights and breached the collective bargaining agreement.  Defendant's summary judgment motion is discussed below.

## II.   <u>Summary Judgment Standard.</u>

Summary judgment is appropriate where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  *FED.R.CIV.P. 56.*  The initial burden of showing that no genuine issue of material fact exists is on the moving party. *Federal Deposit Ins. Corp. v. Meyer*, 781 F.2d 1260, 1267 (7th Cir. 1996).  Once the moving

party has demonstrated the absence of any genuine factual issues, the nonmoving party, to withstand summary judgment, must present specific facts showing that a genuine issue exists for trial. *FED.R.CIV.P. 56(e)*. A genuine issue of material facts exists only where "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.,* 447 U.S. 242, 249 (1986).

### III.   Discussion.

####    A.    Retaliatory Discharge Claim.

To prevail on a retaliatory discharge claim in Illinois, plaintiff must show that: (1) he has been discharged; (2) in retaliation for the employee's activities; and (3) that the discharge violates a clear mandate of public policy. *See Hartlein v. Illinois Power Co.*, 601 N.E.2d 720, 728 (1992). "More specifically, in a worker's compensation situation, a plaintiff must show that he or she: (1) was the defendant's employee before his or her injury; (2) exercised a right granted by the Worker's Compensation Act; and (3) was discharged from his or her employment with a causal connection to his or her filing a worker's compensation claim." *Tullis v. Townley Engineering & Mfg. Co., Inc.*, 243 F.3d 1058, 1062 (7th Cir. 2001) (*citing Kritzen v. Flender Corp.*, 589 N.E.2d 909, 915 (1992)). If, however, the employer has a valid basis for discharging the employee, which is not pretextual, the element of causation is not met. *Hartlein*, 601 N.E.2d at 728. In other words, to show retaliatory discharge in Illinois, plaintiff must set forth some facts from which it can be inferred that not only was he discharged, (or threatened with discharge), but also that the employer's "motive in discharging . . . him was to deter him from exercising his rights under the Act or to interfere

- 6 -

with his exercise of those rights." *Horton v. Miller Chemical Co.*, 776 F.2d 1351, 1356 (7th Cir. 1985).

Plaintiff may create an inference of retaliatory discharge using either the direct method or the indirect method. *Hiatt v. Rockwell Intern. Corp.*, 26 F.3d 761,767-768 (7th Cir.1994); *but cf. Carter v. Tennant Co.*, 383 F.3d 673, 678 (7th Cir.2004) (questioning availability of indirect, burden-shifting method in federal court for state law retaliatory discharge claims); *Bourbon v. Kmart Corp.*, 223 F.3d 469, 472 (7th Cir.2000) (Posner, J., concurring) (same). *Compare Clemons v. Mech. Devices Co.*, 704 N.E.2d 403, 407-08 (Ill.1998) (burden shifting mechanism unavailable in state court). Under the direct method, plaintiff may rely on direct evidence of defendant's acknowledgment of retaliatory intent, or upon circumstantial evidence sufficient to provide a basis for inferring retaliation. *Rogers v. City of Chicago*, 320 F.3d 748, 753-54 (7th Cir.2003). "Direct evidence essentially requires an admission by the decisionmaker that his actions were based upon the prohibited animus." *Id.* at 753 (internal quotations omitted). Circumstantial evidence, on the other hand, is "evidence that allows a jury to infer intentional discrimination by the decisionmaker." *Rogers*, 320 F.3d at 753. Circumstantial evidence can include "(1) suspicious timing, ambiguous statements, etc., (2) evidence that similarly situated employees were treated differently, or (3) evidence that the employee was qualified and passed over for the job and the employer's reason for the difference in treatment is a pretext" for retaliation. *Gorence v. Eagle Food Ctrs.*, 242 F.3d 759, 762 (7th Cir.2001).

Under the indirect method, plaintiff must first establish a *prima facie* case under the

*McDonnell Douglas* framework by showing that: (1) he engaged in a statutorily protected activity, (2) he performed his job according to his employer's legitimate expectations, (3) he suffered an adverse employment action; and (4) he was treated less favorably than similarly situated employees who did not engage in statutorily protected activity. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Hudson v. Chicago Transit Auth.*, 375 F.3d 552, 559 (7th Cir.2004); *Rhodes v. Illinois Dep't of Transp.*, 359 F.3d 498, 508 (7th Cir.2004). There is no need to show a causal connection using the indirect method. *Rhodes*, 359 F.3d at 508. If the plaintiff establishes a *prima facie* case, the burden of production then shifts to defendant to articulate a legitimate, non-discriminatory reason for its action. *Hudson*, 375 F.3d at 559; *Rhodes*, 359 F.3d at 508. If the defendant is able to provide evidence of such a reason, the burden shifts back to plaintiff to show that the articulated reason is actually a pretext. *Hudson*, 375 F.3d at 559; *Rhodes*, 359 F.3d at 508. Under either method, if defendant articulates a legitimate, non-retaliatory reason for its action, plaintiff must come forward with evidence to infer that defendant's reason is a "pretext" for retaliation.

Here, the Court cannot find facts sufficient to create an inference of retaliatory discharge under either the direct or indirect methods. Although there is no dispute that plaintiff was an employee before he was injured or that he exercised his workers' compensation rights, plaintiff cannot establish a causal connection between the exercise of his rights and his termination. Initially, the Court notes that there is no direct or circumstantial evidence to suggest that plaintiff's termination was retaliatorily motivated. Plaintiff himself testified that only one person, Ms. Marie Brasher, ever spoke to him about

- 8 -

his workers' compensation claim. (Doc. 50, Exh. 7, McCoy Dep., pp.19-20, Tr. 48-49). According to plaintiff, Ms. Brasher told him to keep her updated on his medical condition, and she appeared as if she were trying to be helpful. (Doc. 50, Exh. 7, McCoy Dep., pp.19-20, Tr. 48-49).  As such, the only direct or circumstantial evidence that plaintiff has to suggest that his termination was retaliatory is the temporal sequence of events, (i.e., plaintiff exercised his rights and was later terminated).  Plaintiff's termination, however, (November 17, 2003), was nearly seven months after plaintiff exercised his worker's compensation rights, (April 28, 2003).  The United States Court of Appeals for the Seventh Circuit has specifically held that in the absence of other evidence of a causal link, a lengthy time delay between notice of, or filing the claim and termination is insufficient proof of causation.  *See e.g., Fyfe v. City of Fort Wayne,* 241 F.3d 597, 603 (7th Cir. 2001) ("In order to establish a causal connection via mere temporal proximity, the employer's adverse action must follow fairly soon after the employee's protected conduct.") (*citing Hughes v. Derwinski*, 967 F.2d 1168, 1174-75 (7th Cir.1992) (four months insufficient); and *Juarez v. Ameritech Mobile Communications, Inc.*, 957 F.2d 317, 321 (7th Cir.1992) (six months insufficient)).

Furthermore, plaintiff has offered no evidence whatsoever to indicate that similarly situated employees were treated differently.  Indeed, Ms. Brasher has submitted an affidavit stating that, "In the most recent five years, Herrin Laundry Products has terminated 17 employees who failed to provide the Company updated medical information after being requested to do so." (Doc. 50, Exh. 2, Brasher Affidavit, p.1).  Brasher further testified that she was "unaware of any employee who failed to provide updated medical information when

requested, and who was not terminated if he failed to provide such information.  This policy is applied regardless of whether or not the employee has made a claim for workers' compensation benefits." (Doc. 50, Exh. 2, Brasher Affidavit, p.2).  This testimony is supported by Ms. McConnaughy's testimony that the November 6, 2003 letter that she sent to plaintiff is a "standard letter" that she sends to "everyone in this situation." (Doc. 50, Exh. 4, McConnaughy Dep., p.12, Tr.17).  Similarly, Union Representative Steve Jones testified that, "[I]t is not uncommon to see those letters with termination to follow them for a no call, no show, whether you're on comp or not.  That's just not uncommon." (Doc. 50, Exh. 3, Jones Dep., p.9, Tr. 25).  Plaintiff has offered no evidence to show that these statements by Ms. Brasher, Ms. McConnaughy, or Mr. Jones are unworthy of credence.  For all of the above reasons, plaintiff has insufficient evidence to proceed under either the direct or indirect methods.

Even if plaintiff did have sufficient evidence to proceed under either the direct or indirect methods, defendant has articulated a legitimate, non-retaliatory reason for terminating him.  As such, the burden shifts to plaintiff to demonstrate that this reason is pretextual.  To show pretext, plaintiff must offer evidence to indicate that the employer did not honestly believe the reasons it gave for its action and is simply lying to "cover [its] tracks." *See Paluck v. Gooding Rubber Co.*, 221 F.3d 1003, 1012-13 (7th Cir.2000); *Kulumani v. Blue Cross Blue Shield Ass'n*, 224 F.3d 681, 684 (7th Cir.2000).  "A pretext, in employment law, is a 'phony reason' that the employer offers for engaging in discriminatory conduct." *Mills v. First Fed'l Sav. & Loan Ass'n of Belvidere*, 83 F.3d 833, 845 (7th

Cir.1996).  Plaintiff may demonstrate pretext by showing that defendant's reason:  (1) has no basis in fact; (2) did not actually motivate his termination; or (3) the reason was insufficient to motivate the termination.  *See O'Connor v. DePaul University*, 123 F.3d 665, 670 (7th Cir.1997) (*quoting Collier v. Budd Co.*, 66 F.3d 886, 892 (7th Cir.1995)).  To demonstrate pretext, plaintiff's burden is to "squarely rebut the articulated reason" for his termination.  *Plair v. E.J. Brach & Sons, Inc.*, 105 F.3d 343, 349 (7th Cir. 1997) (*citing Smith v. General Scanning, Inc.*, 876 F.2d 1315, 1319 (7th Cir.1989)).

Here, defendant has offered evidence to show that defendant's personnel were operating under the assumption that plaintiff's leave of absence had expired on October 21, 2003. (Doc. 50, Exh. 5, Brasher Dep., pp.6-8, Tr.34-36; Exh. 4, McConnaughy Dep., pp.9-11, Tr.14-16).  As such, shortly thereafter, Nurse Lemay notified Janice McConnaughy that she needed to send plaintiff a letter to obtain his most recent medical information (Doc. 50, Exh. 4, McConnaughy Dep., pp.8-11, Tr.13-16; Exh. 5, Brasher Dep., p.11, Tr.39)).  On November 6, 2003, Ms. McConnaughy sent plaintiff a letter asking him to provide updated medical information. (Doc. 50, Exh. 10, p.17, Bates Stamp 00010).  Having received no response, Ms. McConnaughy then sent plaintiff a termination letter dated November 17, 2003. (Doc. 50, Exh. 10, p.18, Bates Stamp 000062).  On November 20, 2003, plaintiff accepted both the November 6th and November 17th letters. (Doc. 50, Exh. 8, McCoy Dep., p.10, Tr. 61; Exh. 2, p.8, Ashworth Affidavit).

Plaintiff attempts to show pretext by stating that defendant already knew the status of plaintiff's medical condition when it claimed it needed an update.  Specifically, plaintiff

- 11 -

argues that on or about September 25, 2003, surgeon Dr. Harryman faxed two documents to defendant stating that plaintiff was having shoulder surgery and that he would have to be off work for 8 to 10 more weeks.  According to plaintiff, these documents should have excused him from work until at least November 25, 2003, obviating the need for him to submit another medical status report in the interim.  Initially, however, the Court notes that the record shows that the sole decision-maker, Janice McConnaughy, was not aware of these documents from Dr. Harryman.  Specifically, the record shows that upon receipt of the faxed documents, they would have been forwarded directly to Nurses LeMay or Wittenbrink who performed the health services function in an office different from where Ms McConnaughy worked.  (Doc. 50, Exh. 5, Brasher, pp.4-8,11,  Tr.32-36,39).   In other words, Ms. McConnaughy would not have seen the documents.  Furthermore, Ms. McConnaughy testified that Nurse LeMay did not tell her that as of October 3, 2003, plaintiff's documents projected a 8 to 10 week necessary medical leave.  (Doc. 50, Exh. 4, McConnaughy Dep., p.12, Tr.17).  This assertion is consistent with Ms. McConnaughy's email to Nurses LeMay and Wittenbrink asking whether they had received "updated medical documentation for Thomas McCoy . . ." (Doc. 58, Exh. 22).

Furthermore, even if Ms. McConnaughy had been aware of defendant's medical status, the record shows that defendant's policy is to require employees to provide updated medical information at thirty day intervals *regardless* of their medical status.  Indeed, Ms. Brasher testified that:

> A: There – when you're on A&S [Accidental & Sickness],

you're required to supply something every 30 days in order to receive benefits.

Q: Where is that requirement documented?

A: It's our practice and they're told that when they open a new claim.  When they come in and request A&S benefits, they are told that every 30 days they must update their medical.

Q: Okay.  And if the last update is an update that covers an 8 to 10 week period, you make them come in and report their status, even though you already know their status?

A: Every 30 days.

*(Doc. 50 Exh. 5, Brasher Dep., p.10, Tr.38).*

Similarly, Ms. McConnaughy testified that:

Q: Let me attack it this way.  Is it your position that Maytag requires medical documentation every 30 days?

A: That's how I was trained, yes.

Q: And is it your understanding then that if a person brings in medical documentation and the medical documentation covers at least a period of 30 days, that the requirement to then come in and provide additional medical documentation would be 30 days later?

A: All I know is we need to hear from employees once every 30 days.

*(Doc. 50, Exh. 4, McConnaughy Dep., p.12, Tr.17).*

The testimony of both Ms. Brasher and Ms. McConnaughy is supported by the testimony of Union Representative Steve Jones who stated:

At the end of the 30 days, if there is no updated documentation, – let's say that – just for an example, a 30-day month – well,

- 13 -

> June is a 30-day month.  You go out on June 1.  Your leave is for 30 days.  Your leave would be up on June 30.  Unless you provide updated documentation to extend your leave, you're expected to return on July 1.
>
>                                  \*\*\*
>
> They [the company] can require you to submit documentation every 30 days to continue your leave.

*(Doc. 50, Exh. 3, Jones Dep., p.16, Tr.41).*

In this case, the evidence clearly shows that McConnaughy made her decision to terminate plaintiff pursuant to an established policy.  Defendant had enforced this policy to terminate seventeen employees, of whom eight had filed workers' compensation claims and of whom nine had not. (Doc. 50, Exh. 2, Brasher Affidavit, p.2).  There is no indication that defendant established this policy to target workers' compensation filers, and plaintiff has offered nothing to show that the above testimony is unworthy of credence.  For the above reasons, plaintiff's attempt to show that defendant's articulated reason is pretextual fails.

Plaintiff also attempts to show pretext by arguing that defendant knew that its request for updated information did not reach plaintiff before the deadline to respond, yet sent him a termination letter because he did not respond.  The record shows that Ms. McConnaughy sent plaintiff a letter dated November 6, 2003, warning him that he has not complied with the 30-day requirement.  The letter further states that he is subject to termination, and gives him one more chance to comply.  Hearing no response, McConnaughy sent an email to Nurses LeMay and Wittenbrink asking whether they had received updated medical information and what address they had on file.  She then sent a termination letter dated November 17, 2003.

- 14 -

Plaintiff received both letters on November 20, 2003.

Without more, these facts alone do not create an inference of retaliation. As shown, other evidence in the record shows that defendant has routinely terminated employees for failing to provide medical information, many of whom did not have workers' compensation claims. Furthermore, the last medical update that plaintiff provided was October 3, 2003. It was defendant's practice to tell employees receiving A&S benefits such as plaintiff that they must submit a medical update every thirty days. (Doc. 50, Exh. 5, Brasher Dep., p.10, Tr. 38). Plaintiff did not comply. From the record, based on the thirty-day requirement, plaintiff was terminable in early November, and plaintiff points to no requirement that he receive a warning. In other words, if no warning was required, the fact that plaintiff did not receive a warning in time to respond is irrelevant. Most importantly, the simple fact that Ms. McConnaughy sent the termination letter without getting the return receipt back, does not by itself create an inference of retaliation. It simply means that Ms. McConnaughy followed defendant's established thirty-day practice.

Plaintiff also attempts to show pretext by arguing that he had fully complied with the collective bargaining agreement's requirement to keep defendant updated, and that defendant misinterpreted the agreement's reporting requirements. Specifically, plaintiff argues that the thirty-day requirement comes from Article 23 which states:

Article 23.1c

c. Leave of Absence will not be granted for periods in excess of thirty (30) days (except in cases applying to Union Officials as herein-after referred to) unless an additional leave

or an extended leave is again applied for and is granted.

*(Doc. 58, Exh. 29, p.4; Exh. 9d, p.44).*

Plaintiff also notes, however, that the collective bargaining agreement states that, "Article 23 does not apply to plant injuries." *(Doc. 58, Exh. 29, p.4; Exh. 9d, p.45).*

According to plaintiff, because he had a plant injury, Article 23's thirty-day requirement did not apply to him. To show that defendant's proffered reason for termination is a pretext, however, plaintiff must show more than that defendant's decision was mistaken, ill considered or foolish. Pretext "means more than a mistake on the part of the employer; pretext means a lie, specifically a phony reason for some action." *Tincher v. Wal-Mart Stores*, 118 F.3d 1125, 1129 (7th Cir.1997) (*citations omitted*). "The pretext inquiry focuses on the honesty-not the accuracy-of the employer's stated reason for the termination." *Tincher*, 118 F.3d at 1129 (*citations omitted*). Here, the record is clear that defendant's employees consistently believed that the thirty-day requirement applied to plaintiff and that plaintiff's failure to comply would result in termination. (Doc. 50, Exh. 5, Brasher Dep., p.10, Tr.38); (Doc. 50, Exh. 4, McConnaughy Dep., p.12, Tr.17). Indeed, even Union Representative Steve Jones believed the contract applied to plaintiff's situation and required him to submit medical updates every thirty days or face termination. (Doc. 50, Exh. 3, Jones Dep., p.16, Tr.41). "The fact that the employer was mistaken or based its decision on bad policy, or even just plain stupidity, goes nowhere as evidence that the proffered reason is pretextual." *Essex v. United Parcel Service, Inc.*, 111 F.3d 1304, 1310 (7th Cir.1997). Accordingly, plaintiff's argument fails to show that defendant's reason is a pretextual.

In summary, there is simply no evidence from which a reasonable jury could find that McConnaughy's decision to terminate plaintiff was causally connected to his filing a workers' compensation claim. There is no genuine issue of material fact, and defendant is entitled to summary judgment as a matter of law. Accordingly, defendant's summary judgment motion is granted as to plaintiff's retaliatory discharge claim.

**B.      Breach of Collective Bargaining Agreement.**

Count II of plaintiff's complaint alleges that his termination was in violation of the Collective Bargaining Agreement (CBA). Section 8.5 of the Collective Bargaining Agreement, however, contains an exhaustion requirement that states that:

> The Grievance Procedure and Arbitration provided for herein shall constitute the sole and exclusive method of determination, decision, adjustment or settlement between the Parties of any and all grievances as defined herein, and the Grievance procedure and Arbitration provided herein shall constitute the sole and exclusive remedy to be utilized by the Parties hereto for such determination, decision, adjustment, or settlement of any and all grievances as herein defined.

*(Doc. 58, Exh. 25, p.9).*

The United States Supreme Court has held that where a CBA establishes a grievance and arbitration procedure for the redress of employee grievances, employees wishing to assert claims based on the CBA must first exhaust the grievance procedure before resorting to a judicial remedy. *Vaca v. Sipes*, 386 U.S. 171, 184 (1967); *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 652 (1965). In *Clayton v. UAW*, 451 U.S. 679 (1981), the United States Supreme Court directed lower courts considering whether to require exhaustion to

- 17 -

apply three factors:

> first, whether union officials are so hostile to the employee that he could not hope to obtain a fair hearing on his claim; second, whether the internal union appeals procedures would be inadequate either to reactivate the employee's grievance or to award him the full relief he seeks under § 301; and third, whether exhaustion of internal procedures would unreasonably delay the employee's opportunity to obtain a judicial hearing on the merits of his claim.

*Hammer v. UAW,* 178 F.3d 856, 858 (7th Cir. 1999) (*citing Clayton*, 451 U.S. at 689). If any of these factors are found to exist, the Court may excuse the employee's failure to exhaust.  *Hammer,* 178 F.3d at 858.

Plaintiff notes that on the day of his termination, he contacted his lawyer (Doc. 58, p.24).  Plaintiff's counsel at the time contacted defendant's lawyer and attempted to get plaintiff reinstated without success.  According to the record, the first time that plaintiff contacted the Union, however, was on January 15, 2004, two months after his termination (Doc. 50, Exh. 3, Jones Dep., p.2, Tr.8; Exh. 6, McCoy Dep., p.12, Tr.64).  According to Union Representative Jones, the reason that no formal grievance was filed on behalf of plaintiff was that at the time plaintiff had contacted the Union, it was "far beyond 48 hours" which is required under the union contract (Doc. 50, Exh. 3, Jones Dep., p.2, Tr.8).  At his deposition, Mr. Jones testified as follows:

> Q: Are there occasions when Maytag waives the 48 hour rule?
>
> A: Occasionally, yeah.
>
> Q: And under what circumstances do they waive it?

> A: Usually it is a mutual agreement or for further investigation.
>
> Q: Now, is the reason that a grievance wasn't filed in this case is because it was beyond 48 hours?
>
> A: Well, I mean, far beyond 48 hours.  And we even made an attempt to try to, you know, even resolve the dispute even after that point.  We wanted to make sure we did an investigation to give Tom every opportunity to come back to work.

*(Doc. 50, Exh. 3, pp.3-4, Tr.9-10).*

When asked why plaintiff did not contact the Union until January 15, 2004, Jones replied:

> A:  The only explanation I received was that note I made available . . . His attorney basically said not to worry about the termination . . .
>
> Q: Why was a grievance not filed on Mr. McCoy's behalf?
>
> A: It was untimely.

*(Doc. 50, Exh. 3, p.14, Tr.36).*

Under these circumstances, the Court cannot say that any of the above three factors are met.  Specifically, the Court cannot say that the union officials were so hostile to plaintiff that he could not hope to obtain a fair hearing on his claim.  Nor can the Court say that internal union appeals procedures were inadequate to either reactivate the employee's grievance or to award him the full relief he seeks, or that exhaustion of internal procedures would have  unreasonably delayed plaintiff's opportunity to obtain a judicial hearing on the merits of his claim.

Plaintiff argues that a grievance would have been futile because he had only two days

to file a grievance, and that even if he had, both the Company and the Union Representative would have misinterpreted the CBA. Plaintiff also argues that defendant would have repudiated the grievance procedure and that the Union did not fairly represent him because Mr. Jones incorrectly assumed that plaintiff was terminated for violating Article 13.5, which prohibits an employee from failing to report to work for two consecutive days.

Here, however, the record is clear that the Union's refusal to bring a grievance was because plaintiff had waited *two months* to contact the Union about his termination. Specifically, Mr. Jones testified that the 48-hour requirement is occasionally waived, but here it was "far beyond 48 hours." Had plaintiff timely contacted the Union, the Union may well have filed a grievance, and any possible misinterpretations of the CBA may have come to light. Plaintiff, however, precluded the possibility of filing any grievance because he did not contact the Union for two months after his termination. However unfortunate it appears that plaintiff was following the advice of counsel to "not worry about the termination," the fact is, plaintiff was party to a contract that required the timely filing of grievances. Plaintiff did not contact the Union in time for the Union to file a grievance on his behalf. Under these circumstances, the Court finds no exception to the exhaustion requirement. Defendant's summary judgment motion as to plaintiff's claim for breach of collective bargaining agreement is granted.

IV.    **Summary.**

Based upon the above, defendant's motion for summary judgment (Doc. 50) is **GRANTED**. Accordingly, defendant's motion to strike (Doc. 61) is **MOOT**. Judgment

- 20 -

shall be entered against plaintiff and in favor of the defendant.  The Clerk of the Court shall

enter Judgment accordingly.

**IT IS SO ORDERED.**
**DATED: May 15, 2006.**

_s/ James L. Foreman_
**DISTRICT JUDGE**